United States District Court
Southern District of Texas
**ENTERED**
July 10, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | |
|---|---|
| PATRICIA J. NEUMANN, § § Plaintiff, § § v. § § KILOLO KIJAKAZI, Acting Commissioner of § Social Security, § § Defendant. | CIVIL ACTION NO. 6:22-cv-00048 |

**MEMORANDUM AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Patricia J. Neumann ("Plaintiff") seeks judicial review of a final adverse decision by the Acting Commissioner (the "Commissioner") of the Social Security Administration (the "SSA") pursuant to 42 U.S.C. § 405(g).  Plaintiff's main concerns are whether the Administrative Law Judge ("ALJ") decision contains an error of law and whether the ALJ's decision is supported by substantial evidence.  (Doc. No. 11, p. 2.)  Plaintiff requests that the Court vacate the ALJ's decision and remand this matter to the Commissioner for further action.  *Id.* at 6.

This social security appeal has been referred to the undersigned for memorandum and recommendation.  On May 2, 2023, Plaintiff filed a motion for summary judgment.  (Doc. No. 11.)  On July 2, 2023, the Commissioner filed a response.  (Doc. No. 12.)  After review of the parties' briefing, the record, and relevant law, and for the reasons discussed below, the undersigned recommends that the decision of the Commissioner be AFFIRMED and that this case be DISMISSED.  Plaintiff's motion for summary judgment (Doc. No. 11) should be DENIED.

### A. *Jurisdiction.*

The Court has jurisdiction over the subject matter and the parties pursuant to 42 U.S.C. § 405(g). This case has been referred to the undersigned pursuant to 28 U.S.C. § 636.

### B. *Standard of review.*

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two inquiries: (1) whether the decision is supported by substantial evidence on the record as a whole; and (2) whether the decision applied the proper legal standard. *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014) (citing *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005)). Substantial evidence is "more than a mere scintilla and less than a preponderance." *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (citations and internal quotations omitted). This means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Further, in applying this standard, "'[t]he court does not reweigh the evidence in the record, try the issues de novo, or substitute its judgment for the Commissioner's, even if the evidence weighs against the Commissioner's decision.'" *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000) (quoting *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999)). Rather, the court must scrutinize the record to determine whether substantial evidence is present. *Carey*, 230 F.3d at 135 ("Conflicts in the evidence are for the Commissioner to resolve.").

"If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed." *Heather H. v. Kijakazi*, No. 4:20-CV-736, 2021 WL 4138406, at *2 (S.D. Tex. Sept. 10, 2021) (Palermo, M.J.) (citations omitted). The reviewing

court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland*, 771 F.3d at 923.

To qualify for disability insurance benefits or supplemental security income, "a claimant must suffer from a disability." *Id.* A disability is defined as the "inability to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or last for a continued period of 12 months." 42 U.S.C. § 423(d)(1)(A). To determine whether a claimant is disabled for the purposes of disability insurance and supplemental security income, and thus entitled to disability benefits, the ALJ employs a five-step approach, which considers whether:

> (1) the claimant is currently engaged in substantial gainful activity, (2) he has a severe impairment, (3) the impairment meets the severity of an impairment enumerated in the relevant regulations, (4) it prevents the claimant from performing past relevant work, and (5) it prevents him from doing any relevant work.

*Keel v. Saul*, 986 F.3d 551, 555 (5th Cir. 2021) (citing *Garcia v. Berryhill*, 880 F.3d 700, 704 (5th Cir. 2018)); 20 C.F.R. §§ 404.1520, 416.920. The initial burden of proof lies with the claimant on the first four steps, and at the fifth step, the burden shifts to the Commissioner, who must show that, in light of claimant's residual functional capacity ("RFC"), the claimant can perform other substantial work in the national economy. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994). The ALJ need not continue the analysis should, at any step, the Commissioner find that the claimant is or is not disabled. *See Copeland*, 771 F.3d at 923.

RFC, which is determined between the third and fourth steps, is the most a claimant can do despite their limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a); *Perez*, 415 F.3d at 461–62. In determining a claimant's RFC, the ALJ must consider all relevant medical and other evidence, including statements by the claimant and their family members regarding the limitations that

result from the claimant's symptoms.  20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  The plaintiff is responsible for providing the evidence used to make a finding about RFC.  *Id.*  "[T]he determination of residual functional capacity is the sole responsibility of the ALJ."  *Taylor v. Astrue*, 706 F.3d 600, 602–03 (5th Cir. 2012); *Ripley v. Chater*, 67 F.3d 552, 447 (5th Cir. 1995).  The ALJ must articulate how persuasive he or she finds each of the opinions in the record and explain his or her conclusions regarding the supportability and consistency factors.  20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

When determining whether a claimant can perform other relevant work at the fifth step, an ALJ may rely upon a vocational expert's testimony, provided that the record reflects an adequate basis for doing so.  *Carey*, 230 F.3d at 145–47.  The issue at step five is whether the ALJ's hypothetical question to the vocational expert reasonably incorporates the disabilities recognized by the ALJ.  *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).  "A vocational expert is called to testify because of his familiarity with job requirements and working conditions" and may rely on his expertise to arrive at the conclusions he gives to the ALJ. *Vaughan v. Shalala*, 58 F.3d 129, 132 (5th Cir. 1995).

### C. Proceedings.

While working as a bank teller on December 4, 2003, Plaintiff was the victim of an armed robbery.  (Doc. No. 7-1, p. 210.)  This experience led to Plaintiff's diagnosis of post-traumatic stress disorder (PTSD) and panic attacks, as well as anxiety and depression.  *Id*. at 342, 345.  Plaintiff alleges that because of these conditions, she is unable to sustain employment. (Doc. No. 11, p. 3.)

Plaintiff filed an application for disability insurance benefits in September 2015.  (Doc. No. 7-1, p. 14; Doc. No. 11, p. 2.)  Subsequently, Plaintiff had an ALJ hearing on April 9, 2018.

(Doc. No. 7-1, p. 29.) Plaintiff's claim was initially denied on May 8, 2018. (Doc. No. 7-1, p. 11.) Then, the Appeals Council denied Plaintiff's request for further administrative review, and Plaintiff sought judicial review. *Id*. at 5-9, 168, 416-21. In accordance with this Court's February 2020 Order and Judgment, the Appeals Council vacated the ALJ's May 2018 decision, and remanded this case for further administrative proceedings. *Id*. at 423-31.

After holding a hearing on October 8, 2020, an ALJ issued a decision in November 2020 finding Plaintiff not disabled and not entitled to disability insurance benefits through December 31, 2018, when her insured status expired. *Id*. at 366-411. When her insured status expired, Plaintiff was 56 years old. *See id*. Plaintiff has a high school equivalent education and past relevant work as a bank teller. *Id*. at 193, 201.

On October 8, 2020, Plaintiff, who was represented by counsel, testified via telephone and under oath regarding her disability. (Doc. No. 7-1, p. 390.) Karen Nielsen, a vocational expert, also testified regarding Plaintiff's ability to complete hypothetical tasks and perform related employment duties. *Id.* at 395, 406-09. On November 4, 2020, the ALJ found Plaintiff "not disabled" pursuant to §§ 216(i) and 223(d) of the SSA, and therefore not entitled to disability benefits. *Id*. at 382.

Plaintiff submitted written exceptions to the Appeals Council, and in September 2022, the Appeals Council found that these written exceptions did not provide a basis for modifying the ALJ's November 2020 decision. (Doc. No. 7-1, pp. 360-68.)

On November 14, 2022, Plaintiff timely filed this action for judicial review of the Commissioner's final decision. (Doc. No. 1.) Plaintiff prays that the Court grant her motion for summary judgment and remand her claim to the Commissioner for further action. (Doc. No. 11, p. 6.)

### D. *The October 8, 2020 ALJ hearing.*

On October 8, 2020, Plaintiff appeared via telephone for a hearing before the ALJ. (Doc. No. 7-1, p. 390.) Plaintiff alleged that she has been unable to work since November 1, 2013 because of her disability. *Id*. at 392. At the time of this alleged disability onset date, Plaintiff was 51 years old. *Id*. at 572. The basis for Plaintiff's disability claim is PTSD, panic attacks, anxiety, and depression. (Doc. No. 11, p. 3.)

After this hearing, the ALJ considered whether Plaintiff was disabled under §§ 216(i) and 223(d) of the Social Security Act. (Doc. No. 7-1, p. 370.) In working through the five-step sequential process, the ALJ made the following determinations:

(1) Plaintiff met the insured status requirements of the Social Security Act on December 31, 2018. (Doc. No. 7-1, p. 372.)

(2) Plaintiff has not engaged in substantial gainful activity since November 1, 2013, her alleged onset date, through December 31, 2018, the date last-insured. *Id*. (citing 20 C.F.R. § 404.1571).

(3) Plaintiff has the following severe impairments: anxiety, depression, bronchitis, allergic rhinitis, and obstructive sleep apnea pursuant to 20 C.F.R. § 404.1520(c). *Id.*

(4) Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). *Id*. at 372-74.

(5) After careful consideration of the entire record, the ALJ found that Plaintiff had the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations: she can occasionally[1] work around dust, odors, fumes, pulmonary irritants, and extreme heat; understand, remember, and carry out simple instructions; use judgment to make simple, work-related decisions; adapt to occasional changes in a routine work setting; and

---

[1] "Occasionally" for purposes of Social Security disability determinations means from very little up to one-third of the time, depending on the particular job. *See* Social Security Ruling (SSR) 83-14, 1983 WL 31254, at *2 (S.S.A. Jan. 1, 1983).

      occasionally interact with supervisors and coworkers, but never interact with the general public. (Doc. No. 7-1, pp. 374-80.)

(6) Plaintiff was not able to perform any past relevant work pursuant to 20 C.F.R. § 404.1565. *Id.* at 380.

(7) On the date last insured, Plaintiff was 56 years old, which is defined as an individual of advanced age pursuant to 20 C.F.R. § 404.1563. *Id.*

(8) Plaintiff had at least a high school education. *Id.* (citing 20 C.F.R. § 404.1564).

(9) Transferability of job skills was not material to the determination of disability, because using the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not the claimant has transferable job skills. *Id.* (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

(10)     Considering Plaintiff's age, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff could perform (20 C.F.R. §§ 404.1569 and 404.1569(a)), including stocker, hospital dietary aide, or cleaner. *Id.* at 380-81.

Accordingly, the ALJ determined Plaintiff had not been under a disability, as defined by the Social Security Act, from November 1, 2013, through the date of the ALJ's decision on November 4, 2020. *Id.* at 381.

    *E. Discussion.*

        *1. The ALJ applied the correct legal standards, and properly evaluated the opinions of Dr. Coonfield and Dr. Edwards.*

Plaintiff alleges that the ALJ erred in his step three determination that the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one or more of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Doc. No. 11, p. 5 (citing Doc. No. 7-1, p. 368).) Plaintiff contends that because the ALJ found that Plaintiff suffers from anxiety and depression, and that the relevant Listings for these ailments are 12.04 and 12.06, respectively, then if the severity of these conditions satisfies the criteria in

Listings 12.04 B or 12.06 B, then Plaintiff is presumptively disabled. *Id*. Listings 12.04 B and 12.06 B state the following:

> B.  Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning . . .
>   1. Understand, remember, or apply information;
>   2. Interact with others;
>   3. Concentrate, persist, or maintain pace;
>   4. Adapt or manage oneself.

Plaintiff argues that the assessment by David L. Edwards, Ph.D. ("Dr. Edwards"), a licensed psychologist, satisfies the 12.04 B and 12.06 B provisions two, three, and four such that Listings 12.04 and 12.06 are met at step three of the sequential evaluation process. *Id*. Further, Plaintiff argues that Kimberly V. Coonfield, M.D. ("Dr. Coonfield"), a doctor of internal medicine, assessed the severity of Plaintiff's conditions and satisfied all four of the B criteria relating to Listings 12.04 and 12.06 at marked or worse. *Id*. (citing Doc. No. 7-1, pp. 499-500). Plaintiff urges that, unless the ALJ introduces some contrary and substantial medical evidence, the ALJ violated Plaintiff's substantial rights by applying incorrect legal standards and failing to find that Plaintiff met her burden at step three of the sequential evaluation process. *Id.* at 5–6. Therefore, Plaintiff concludes, the error was not harmless, and remand is required. *Id*. at 6.

The Commissioner argues that the ALJ properly assigned little weight to the assessments performed by Dr. Edwards and Dr. Coonfield. (Doc. No. 12, p. 10.) Instead, the Commissioner maintains, Plaintiff failed to cite objective medical evidence showing that her conditions satisfied all the requirements of Listings 12.04 or 12.06 as of December 31, 2018. *See id.* Thus, the Commissioner concludes, Plaintiff failed to satisfy the standard for remand established in *Audler*

*v. Astrue*, 501 F.3d 446, 448-49 (5th Cir. 2007),[2] and the Court should affirm the ALJ's decision. *Id.*

Plaintiff initiated her case on September 17, 2015. (Doc. No. 11, p. 2.) Therefore, the "old rule" regarding the weight of medical opinion evidence applies. *Webster v. Kijakazi*, 19 F.4th 715, 719 (5th Cir. 2021) (comparing 20 C.F.R. § 404.1527 (2016) with 20 C.F.R. § 404.1520c) ("For claims filed after March 27, 2017, an ALJ instead considers a list of factors in determining what weight, if any, to give a medical opinion."). As to supportability, "[t]he more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight [the ALJ] will give that medical opinion." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3). Further, "[t]he better an explanation a source provides for a medical opinion, the more weight [the ALJ] will give that medical opinion." *Id.* Consistency means that "the more consistent a medical opinion is with the record as a whole, the more weight [the ALJ] will give to that medical opinion." *Id.* §§ 404.1527(c)(4), 416.927(c)(4). An adequate explanation of supportability and consistency is one that "enables the court to undertake a meaningful review of whether his finding with regard to the particular medical opinion was supported by substantial evidence, and does not require the Court to merely speculate about the reasons behind the ALJ's persuasiveness finding or lack thereof." *Luckett v. Kijakazi*, No. 4:20-cv-04002, 2021 WL 5545233, at *4 (S.D. Tex. Nov. 26, 2021) (Edison, M.J.) (quoting *Cooley v. Comm'r of Soc. Sec.*, No. 2:20-CV-46-RPM, 2021 WL 4221620, at *6 (S.D. Miss. Sept. 15, 2021)).

---

[2] The standard for remand under *Audler* requires the plaintiff to establish both that the ALJ erred in his Listings analysis, and that this error affected the plaintiff's substantial rights. This is further discussed below in Section E.2, pages 15-18.

### *a. The ALJ did not err in his evaluation of Dr. Coonfield's medical opinion.*

Plaintiff argues that because Dr. Coonfield assessed all four of the B criteria relating to Listings 12.04 and 12.06 at marked or worse, her opinion, taken with Dr. Edwards' opinion demonstrates that Plaintiff met her burden of showing that she meets the Listing requirements for Listings 12.04 and 12.06. (Doc. No. 11, p. 5.) Plaintiff also argues that the ALJ improperly gave little or no weight to the opinion of Dr. Coonfield or Dr. Edwards. *Id*. at 6. Further, Plaintiff contends that by solely giving "great weight" to the opinion of Jean Germain, Ph.D. ("Dr. Germain"), which according to Plaintiff is based on the opinions of Dr. Edward and Dr. Coonfield, both of whom found that Plaintiff meets the listing requirements, then there must not be substantial evidence to support the ALJ's conclusion that the underlying opinions of both Dr. Edward and Dr. Coonfield should be given little weight. *Id*. The Commissioner, meanwhile, argues that Plaintiff's reliance on Dr. Coonfield's and Dr. Edwards' opinions is misplaced, and that Plaintiff has failed to satisfy her step three burden of showing that she had impairments that met the requirements of Listings 12.04 or 12.06 as of December 31, 2018, when her insured status expired. (Doc. No. 12, p. 10.)

A treating physician's opinion may be given little or no weight when good cause is shown. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) (citing *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Good cause includes "disregarding statements [by the treating physician] that are brief and conclusory . . . ." *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995) (internal quotation marks omitted) (brackets original). "The 'questionnaire' format typifies 'brief or conclusory' testimony." *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011). And, opinions based on checkmark forms without further explanation may be discounted.

*See DeJohnette v. Berryhill*, 681 F. App'x 320, 321-22 (5th Cir. 2017); *Tobin v. Astrue*, No. 4:10-CV-1519, 2012 WL 124441, at *12 (E.D. Mo. Jan. 17, 2012) ("[A] treating physician's checkmarks on a form are conclusory opinions which can be discounted if contradicted by other objective medical evidence."). "Isolated comments regarding a patient's complaints do not constitute medical findings as required by the Act." *McLendon v. Barnhart*, 184 F. App'x 430, 432 (5th Cir. 2006) (citing 20 C.F.R. §§ 404.1528–1529).

As a preliminary matter, the undersigned notes that Dr. Coonfield's opinion was provided in a four-page, fill-in-the-blank "Medical Questionnaire" that contained only checkmarks and short responses. (Doc. No. 7-1, pp. 379, 498-501.) Thus, Dr. Coonfield's opinion was brief and conclusory. Also, Dr. Coonfield merely provided support and explanation for her opinion within the questionnaire. *Id*. at 379, 498-501; *see* 20 C.F.R. § 404.1527(c)(3) (indicating that if a medical source fails to provide relevant evidence to support her opinion, "particularly medical signs and laboratory findings," the opinion deserves less weight). Further, this questionnaire did not define "marked" or "frequent" to show that Dr. Coonfield's use of these words matches the Commissioner's definition of "marked" or "extreme" limitations required to satisfy paragraph B of Listings 12.04 or 12.06. (Doc. No. 7-1, pp. 373, 498-501); 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00F(2)(d-e). Therefore, because of the limited evidentiary value of a checklist or questionnaire, the ALJ had good cause to decline to follow Dr. Coonfield's April 2018 opinion. (Doc. No. 7-1, pp. 379, 498-501.)

In addition, even if Dr. Coonfield's opinion was not brief and conclusory such that it should have been entitled to more weight than it was given, the ALJ demonstrated that Dr. Coonfield's own treatment records do not support her opinion. (Doc. No. 7-1, pp. 273-306, 354-59, 375-79, 497-515); *see* 20 C.F.R. § 404.1527(c)(3) (supportability is a relevant factor when

11 / 19

weighing a medical opinion); *see also Salmond v. Berryhill*, 892 F.3d 812, 818-19 (5th Cir. 2018) (recognizing the reasonableness of weighing a doctor's treatment notes against the doctor's own medical opinion). Dr. Coonfield's treatment records do not include any mental status examination findings or notations regarding observed behavior to support her opinion regarding Plaintiff's mental limitations. (Doc. No. 7-1, pp. 283, 286-87, 290-91, 299-300, 303, 354, 498-515.)

Primarily, Dr. Coonfield described, in multiple instances, that Plaintiff's anxiety was successfully managed by medication. In November 2013, Dr. Coonfield noted that Plaintiff reported Effexor[3] helped her "quite a bit" with anxiety, and Dr. Coonfield assessed "improved" anxiety. (Doc. No. 7-1, pp. 285, 287.) In December 2013, Dr. Coonfield noted "anxiety controlled on Effexor." *Id*. at 289, 291. At her four-month follow-up visit in April 2014, Plaintiff reported that she felt "well," and her anxiety was "much improved." *Id*. at 297. Dr. Coonfield also assessed "controlled" anxiety in April 2014. *Id*. at 300. Further, in August 2015, at a visit with Dr. Coonfield, Plaintiff did not even mention experiencing anxiety. *Id*. at 376, 512-15.

A medical condition that treatment or medication can remedy is not disabling. *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987). Accordingly, Dr. Coonfield's treatment records do not support her opinion, particularly her opinion that due to severe anxiety Plaintiff had marked restrictions in daily activities and social functioning, frequent deficiencies in concentration,

---

[3] Effexor "is an antidepressant medication that works in the brain" and that is "approved for the treatment of major depressive disorder (MDD), generalized anxiety disorder (GAD), panic disorder, and social anxiety disorder (social phobia)." National Alliance on Mental Illness, *Venlafaxine (Effexor)*, https://www.nami.org/About-Mental-Illness/Treatments/Mental-Health-Medications/Types-of-Medication/Venlafaxine-(Effexor) (last visited July 6, 2023).

persistence, and pace, and frequent episodes of decompensation. (Doc. No. 7-1, pp. 379, 498-500.)

Dr. Coonfield's opinion fails not only for lack of supportability, but also for lack of consistency. Dr. Coonfield's opinion is inconsistent with the normal mental status examinations in 2015 by Michelle M. Cummins, M.D., MSc. ("Dr. Cummins"), including normal memory, communication, orientation, judgment, insight, mood, affect, and "capacity for sustained mental activity." (Doc. No. 7-1, pp. 313-35, 372, 379.) Dr. Coonfield's opinion is also inconsistent with treatment records from Mid Coast Medical Clinic that show Plaintiff was alert, cooperative, and "in no acute distress" in December 2015 and February 2016. *Id.* at 351-53. Again, Plaintiff reported that medication helped alleviate her anxiety in March 2016. *Id.* at 349-50, 377.

In sum, the ALJ considered all medical opinions and prior administrative medical findings, using the relevant factors, and properly gave little weight to Dr. Coonfield's opinion. The record shows that Dr. Coonfield's opinion was unsupported by her own treatment records and inconsistent with the record evidence. Accordingly, the ALJ did not err in her evaluation of Dr. Coonfield's opinion.

### b. *The ALJ did not err in his evaluation of Dr. Edwards' opinion.*

Plaintiff contends that the ALJ did not properly evaluate Dr. Edwards' opinion in determining whether Plaintiff met a Listing at step three of the ALJ's sequential evaluation process. (Doc. No. 11, p. 5.) Specifically, Plaintiff argues that Dr. Edwards' opinion regarding Plaintiff's marked decrease in activities of daily living, social functioning, and concentration, persistence, and pace, should have led the ALJ to determine that Plaintiff had satisfied the B criteria discussed above, and thus that she had met her burden of showing a disability at step

three of the ALJ's evaluation. *Id.* The Commissioner counters that the ALJ properly gave little weight to Dr. Edwards' opinion. (Doc. No. 12, pp. 6–7.)

Dr. Edwards' opinion, like Dr. Coonfield's opinion, was unsupported by Dr. Edwards' own evaluation and was inconsistent with the record as a whole. (Doc. No. 7-1, pp. 341-46, 376-77); *see* 20 C.F.R. § 404.1527(c) (2017) (consistency and supportability are relevant factors when weighing opinion evidence). Dr. Edwards' mental status examination showed intact memory, attention, concentration, judgment, and insight. (Doc. No. 7-1, pp. 344-45.) This does not support his opinion relating to "markedly" decreased activities of daily living, social functioning, and concentration, persistence, and pace. *Id*. at 345, 376-77. In addition, even though Dr. Edwards notes "markedly" decreased functioning, neither Dr. Edwards nor Plaintiff ever established that this definition of "markedly" equates to the definition of "marked" in the Listings. *See* Doc. No. 11, pp. 4-5; 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00F(2)(d). Dr. Edwards' opinion is also inconsistent with Dr. Cummins' normal mental status examinations and the treatment records from Mid Coast Medical Clinic discussed in the above analysis. (Doc. No. 7-1, pp. 313-35, 341-46, 349-52, 372, 377, 379.) Notably, Dr. Edwards' opinion was based on a one-time examination of Plaintiff's functioning in December 2015. *Id*. at 341-46.

In sum, the ALJ considered all medical opinions and prior administrative medical findings, using the relevant factors, and properly gave little weight to Dr. Edwards' opinion. The record shows that Dr. Edwards' opinion was unsupported by his own treatment records and inconsistent with the record evidence. Accordingly, the ALJ did not err in his evaluation of Dr. Edwards' opinion.

>   ***2. The ALJ's decision is supported by substantial evidence. Plaintiff failed to satisfy her step three burden of showing that she had impairments that met the requirements of Listings 12.04 or 12.06 as of December 31, 2018, when her insured status expired.***

Plaintiff argues that the ALJ conclusion that Plaintiff's impairments do not meet Listings 12.04 and 12.06 is not supported by substantial evidence. (Doc. No. 11, p. 6.) The Commissioner argues that substantial evidence supported the ALJ's finding that Plaintiff is not disabled. (Doc. No. 12, p. 11.)

At step three of the sequential evaluation process, the burden remains on Plaintiff to establish that her impairment meets or equals an impairment enumerated in the Listings. *Carey*, 230 F.3d at 135; *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991). Remand is not required unless the claimant establishes that the ALJ erred in his Listings analysis, and this error affected the claimant's substantial rights. *Audler*, 501 F.3d at 448-49; *see also Shinseki v. Sanders*, 556 U.S. 396, 414 (2009) (the claimant bears the burden of showing that any error was harmful). A claimant must manifest all the specified criteria of a particular listing to qualify for disability under that listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

Here, as explained above, Plaintiff relies on the opinions of Dr. Coonfield and Dr. Edwards, which the ALJ properly determined should receive little weight. Plaintiff fails to cite to additional objective medical evidence demonstrating that her conditions satisfied all the requirements of Listings 12.04 and 12.06, particularly the B criteria enumerated by these Listings, as of December 31, 2018. (Doc. No. 11, pp. 4-5.) After considering the persuasiveness of the opinions of Dr. Edwards and Dr. Coonfield, the ALJ based his decision on the remaining medical evidence about Plaintiff's ability to understand, remember, or apply information;

interact with others; concentrate, persist, or maintain pace; and adapt or manage herself. (Doc. No. 7-1, pp. 372-80); *see* Listings 12.04 B and 12.06 B.

The remaining evidence included two examinations, in December 2015 and February 2016, performed at Mid Coast Medical Clinic, where the medical providers described Plaintiff as alert, cooperative, and "in no acute distress." (Doc. No. 7-1, pp. 351-52, 377.) The ALJ also noted that in February 2016, Plaintiff reported that her medications help with her symptoms. *Id*. at 377. Further, state agency psychologist Dr. Germain considered the medical evidence available through February 15, 2016, and agreed with state agency psychologist, Sarah Jackson, Ph.D., who reviewed the record in early January 2016, and opined that Plaintiff had, at most, moderate limitations in the Paragraph B criteria of Listings 12.04 and 12.06. *Id*. at 56-61, 73, 379. To be clear, this was in spite of the medical evidence available to Dr. Germain that included some of Dr. Coonfield's treatment records and Dr. Edwards' opinion. *Id*. at 69-74, 82, 379. In other words, Plaintiff errs in her argument that Dr. Germain's opinion relied on Dr. Coonfield and Dr. Edwards' opinions such that the ALJ had to have found that Plaintiff met the Paragraph B criteria of Listings 12.04 and 12.06.

On March 3, 2016, Plaintiff did not mention a mental impairment or symptoms when she saw Laura Williams, P.A. ("Physician Assistant Williams"), at Mid Coast Medical Clinic. (Doc. No. 7-1, pp. 350, 377.) Plaintiff returned to Physician Assistant Williams on March 11, 2016 and reported that Trazodone[4] and a combination of anxiety medications helped alleviate her symptoms. *Id*. at 349, 377.

---

[4] Trazodone is a medication used to treat depression. National Library of Medicine, *Trazodone*, https://medlineplus.gov/druginfo/meds/a681038.html (last visited July 10, 2023).

The ALJ did note that Plaintiff self-reported, in May 2016, that she was unable to work due to severe anxiety because of her past trauma. (Doc. No. 7-1, p. 377.) And that Plaintiff was assessed with "severely uncontrolled anxiety with PTSD." *Id.* However, the ALJ also pointed out that Plaintiff was prescribed a low dose of Sertraline[5] to control her symptoms and that Plaintiff's overall self-assessment was that she was in good condition and exercised by walking. *Id.* Finally, in July 2018, Brooke Dorotik, M.D., at Mid Coast Medical Clinic noted that Plaintiff was alert, "well appearing," and well groomed, as well as with memory intact, normal affect. *Id.* at 537-38. It was not until 2020, after Plaintiff's date last insured, that Plaintiff sought counseling and psychiatric treatment. *Id.* at 378, 540-45. The ALJ concluded that "[w]hile [Plaintiff's] mental health treatment shows that she was somewhat limited by her anxiety, the record as a whole does not support the severity alleged or that [Plaintiff] is unable to work on regular and continuing basis due to her mental impairment." *Id.* at 378. The ALJ stated that there were several inconsistencies in the record, but that despite these inconsistencies, Plaintiff "retained the ability to understand, remember, and carry out simple instructions secondary to her mental impairments." *Id.*

In sum, Plaintiff has failed to satisfy the standard for remand established in *Audler*. The ALJ appropriately relied on the longitudinal medical records, the opinions of the State agency medical consultants, and the claimant's activities in interpreting the medical evidence. *See* Doc. No. 7-1, p. 378; *Taylor*, 706 F.3d at 603 ("What [the plaintiff] characterizes as the ALJ substituting his opinion is actually the ALJ properly interpreting the medical evidence to determine his capacity for work.") The ALJ properly applied the legal standards, and his

---

[5] Sertraline is a medication used to treat depression, panic attacks, post-traumatic stress disorder, obsessive-compulsive disorder, and social anxiety disorder. National Library of Medicine, *Sertraline*, https://medlineplus.gov/druginfo/meds/a697048.html (last visited July 10, 2023).

disability decision was based upon substantial evidence in a sufficiently developed record. Further, even if Plaintiff had met her burden in the first four steps of the sequential evaluation process, the ALJ properly found at step five that Plaintiff retained the ability to perform work that existed in significant numbers in the national economy, properly relying on the testimony of a vocational expert: that finding remains uncontested. *See Cotter v. Kijakazi*, No. 22-10953, 2023 WL 2759064, at *1 (5th Cir. Apr. 3, 2023). Therefore, remand is inappropriate; the ALJ's decision should be affirmed.

### F. *Conclusion and recommendations.*

After review of the parties' briefing, the record, and relevant law, and for the reasons discussed above, the undersigned concludes that the Commissioner applied the proper legal standard in evaluating the medical opinions, determining that Plaintiff does not meet all the requirements of Listings 12.04 and 12.06, and finding Plaintiff not disabled. Further, the Commissioner's decision was supported by substantial evidence. The undersigned therefore recommends that the decision of the Commissioner be AFFIRMED and that this case be DISMISSED. Plaintiff's motion for summary judgment (Doc. No. 11) should be DENIED.

### G. *Notice*.

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel. Within **14 DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, and the United States District Court for the Southern District of Texas.

A failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within **14 DAYS** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*).

SIGNED on July 10, 2023.

_____
MITCHEL NEUROCK
United States Magistrate Judge